# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| TOMMY J. DEES, | ) |
| --- | --- |
| Plaintiff, | ) |
| -vs- | ) Case No. CIV-19-0915-F |
| DOBSON TECHNOLOGIES, et al., | ) |
| Defendants. | ) |

## ORDER

Dobson Technologies, Inc., and Patrick Galloway (defendants) move for dismissal of the Family Medical Leave Act (FMLA) claim alleged in count three of the complaint.[1] Doc. no. 2. Plaintiff Tommy Dees has responded, objecting to dismissal of the FMLA claim. Doc. no. 7. Defendants filed a reply brief. Doc. no. 8. The motion will be denied for the reasons stated below.

The complaint alleges claims under the Americans with Disabilities Act (the ADA), the Oklahoma Anti-Discrimination Act (the OADA), and the FMLA. Only the FMLA claim is challenged in the motion. That claim alleges that when defendants terminated plaintiff, they interfered with his rights under that Act. Doc. no. 1-1, ¶87. Defendants argue the FMLA claim should be dismissed under Rules 8(a)(2) and 12(b)(6), Fed. R. Civ. P.

---

[1] The court refers to the petition filed in state court as the complaint.

Rule 8(a)(2) provides that "A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief."

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Defendants argue the FMLA claim is not plausible because allegations establish that plaintiff had not been employed by Dobson Technologies for twelve months prior to his need for FMLA leave. As a result, defendants contend plaintiff was not an eligible employee for purposes of the FMLA. Defendants argue that the date used to determine whether an employee has been employed by the defendant-employer for a total of at least twelve months, is the date FMLA leave is to start. Here, October 2, 2017, is the first work-day following the onset of the alleged medical condition which caused plaintiff to miss work. This is clear from allegations which indicate: that plaintiff's symptoms began over a weekend; that on October 2, 2017 (a Monday), plaintiff was admitted to the hospital; that doctors at the hospital diagnosed plaintiff as having a left vertebral artery aneurysm and subarachnoid hemorrhage (*i.e.* the aneurysm had ruptured); after which plaintiff underwent surgery on October 3, 2017. Based on these allegations, defendants argue that plaintiff's FMLA leave would have been required to start on October 2, 2017, which, as plaintiff concedes in the complaint, was approximately one month shy of his one-year employment anniversary. *See*, doc. no. 1-1, ¶ 75 ("At the time of his termination [on October 3, 2017, *id.*, ¶ 36], Plaintiff was within approximately one month of his one-year anniversary of employment with Defendant Dobson."). While defendants state that there are circumstances in which the law extends FMLA protection to an employee who is not yet an eligible employee, they argue that no allegations plausibly show such a situation existed here.

In response, plaintiff argues that one of the exceptions to the general rule (the rule that would otherwise make him an ineligible employee) applies. Specifically, plaintiff argues he should have been granted a leave of absence to recover from his aneurysm and surgery, as such leave was a reasonable accommodation to which he was entitled under the ADA. Plaintiff argues that if defendants had provided him

with that accommodation, he would have been on ADA leave at the time he became eligible for FMLA leave. Plaintiff cites 29 C.F.R. §825.110(d) to support his position that he could have used ADA leave until such time as he became eligible for FMLA leave (*i.e.* for approximately one month).²

Defendants acknowledge that a person who is not an eligible employee at the time he needs immediate leave may use non-FMLA leave until he is eligible for FMLA leave. Doc. no. 2, p. 6 (noting this rule has its source in 29 C.F.R. §825.110(d), the same regulation relied on by plaintiff). Defendants argue, however, that there are no allegations which plausibly show that plaintiff was entitled to a month of ADA leave as a reasonable accommodation of his medical condition. Defendants also argue that the allegations do not plausibly show, and that the allegations, in fact, establish, that plaintiff never requested ADA leave, which defendants argue is a requirement for ADA leave. Doc. no. 8, pp. 2-3.

Plaintiff disagrees with these arguments. He identifies allegations intended to show that he was entitled to a month of ADA leave as a reasonable accommodation to his life-threatening medical condition. He also points to allegations which describe the efforts he and others made to notify defendants about his condition and his absence from work, and to request accommodation. Allegations potentially relevant to plaintiff's position may include the following.

> -- "Granting to plaintiff a leave of absence in order to recover from his surgery and aneurysm was a reasonable accommodation." Doc. no. 1-1, ¶ 57.

---

² 29 C.F.R. § 825.110(d) provides that "An employee may be on non-FMLA leave at the time he or she meets the 12-month eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA-leave."

4

-- "Plaintiff had leave available to him at the time of his termination." *Id.*, ¶ 62.

-- Defendants were aware of the reason for plaintiff's absence from work (*i.e.* his medical condition) by October 3, 2017, the date of plaintiff's termination and also the date of his surgery. *Id.*, ¶ 59.

-- Plaintiff's supervisor received a voicemail from plaintiff in which plaintiff reported that he believed he had been "drugged or something" over the weekend, that he did not know what had happened, and that he could not move. *Id.*, ¶ 34. These confused statements were consistent with plaintiff's medical condition at the time. *Id.*, ¶ 35.

-- Defendants decided to terminate plaintiff's employment at approximately 11:12 a.m. on October 3, 2017. *Id.*, ¶ 36.

-- "Because he was physically unable to do so himself, Plaintiff requested accommodations through Hunt [a friend] and Chancellor [his cousin] who reported Plaintiff's medical condition to Defendant and requested Defendant reconsider its decision to termination [sic] Plaintiff." *Id.*, ¶ 58. For example, "On October 3, 2017, Hunt called Defendant and reported Plaintiff's condition to Colloway [sic]." *Id.*, ¶ 37. "On or about Wednesday, October 4, 2017, Chancellor attempted several times to call Defendant regarding Plaintiff's condition. Each time, his call was forwarded to voicemail." *Id.*, ¶ 42. "Therefore, Chancellor went to Defendant's location in person." *Id.*, ¶43. Chancellor met with the human resources manager and advised her "that Plaintiff was in the hospital after having surgery for a ruptured aneurysm." *Id.*, ¶ 46. The human resources manager responded that "no one can hear you say that," then ushered Chancellor into a private room. *Id.*, ¶ 47. "Chancellor demanded that Defendant reinstate Plaintiff to his position." *Id.*, ¶49.

In summary, the motion to dismiss, which challenges only the FMLA claim, now turns on whether plaintiff has plausibly alleged entitlement to one month of ADA leave. Given that shift in the arguments, and given that plaintiff has identified potentially relevant allegations to support his entitlement to ADA leave, it would be premature to dismiss the FMLA claim. For that reason, the motion to dismiss the

5

FMLA claim is **DENIED**. The denial is without prejudice to defendants raising their arguments again, at a later stage, if appropriate to do so.

IT IS SO ORDERED this 22nd day of November, 2019.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0915p001.docx