# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOMMY J. DEES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. CIV-19-0915-F |
| ) | |
| DOBSON TECHNOLOGIES, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Dobson Technologies, Inc., Patrick Calloway, Trent LeForce and Sarwat Elledge (defendants) move for summary judgment on all claims alleged in this action. Doc. no. 42.[1] Plaintiff Tommy J. Dees has responded, objecting to summary judgment. Doc. no. 50. Defendants filed a reply brief. Doc. no. 51.

The motion will be granted for the reasons stated below.

### I. The Complaint

Plaintiff is Tommy J. Dees, previously employed by Dobson Technologies, Inc. (Dobson).

Defendants are Dobson and three individuals, Calloway, LeForce (chief operating officer) and Elledge (human resources manager), all of whom are alleged to have been employed by Dobson at times relevant to this action.

---

[1] Defendants' sealed exhibits (15, 16, 18 and 20) are at doc. no. 43. Defendants' ex. nos. 7 and 17 are voicemails, conventionally filed on a flash drive. Doc. no. 44 (notice), doc. no. 45 (flash drive). Defendants' ex. no. 21 was inadvertently left out of the exhibits to the moving brief and is attached to the reply brief.

The first amended complaint (doc. no. 14, hereafter, the complaint) alleges claims under the Americans with Disabilities Act as revised by the Americans With Disabilities Act Amendments of 2008 (referred to in this order simply as the ADA), the Oklahoma Anti-Discrimination Act (OADA), and the Family Medical Leave Act (FMLA). The ADA and OADA claims allege 1) that defendants terminated plaintiff's employment due to plaintiff's disability; and 2) that defendants failed to accommodate plaintiff's disability by granting him a leave of absence to recover from a brain aneurysm. The FMLA claim alleges 3) that when defendants failed to put plaintiff on leave until he could qualify as an eligible employee under that Act, they interfered with his ability to assert his rights under the FMLA.

## II.  Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere

allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to avoid a properly supported summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. Undisputed Facts

The following facts are undisputed.[2]

-- On November 10, 2016, plaintiff was hired by defendant Dobson as a technical support analyst. Defendants' undisputed material fact (UMF) no. 1.

-- On August 18, 2017, Dobson placed plaintiff on a performance improvement plan. As behaviors which plaintiff needed to improve, the plan listed wearing appropriate attire for customer site visits and following the phone script when answering telephone calls. Defendants' UMF no. 3 and doc. no. 42-3.

-- On August 24, 2017, plaintiff received another warning regarding his performance improvement plan. At that time, the plan listed "exceeded his allotted ten bounced calls for the week of August 13th through August 20th." The plan also noted that plaintiff "had twenty bounced calls and was not on-call." Defendants' UMF no. 4 and doc. no. 42-4.

---

[2] In some instances, plaintiff purports to dispute a fact which the court has found to be undisputed on this record. (None of plaintiff's responses to defendants' numbered facts include citations to any evidence. Rule 56(c), Fed. R. Civ. P., provides that where a party states that a fact is disputed, such party must cite to particular parts of materials in the record. In addition, LCvR56.1 provides that the nonmovant's numbered paragraphs which correspond to those of the movant, shall be followed by citation, with particularity, to any evidentiary material nonmovant relies on; unless specifically controverted in this manner, the material facts of the movant may be deemed admitted.)

-- On September 19, 2017, plaintiff received a written warning indicating he had been "unprofessional with our customers; both verbally and degrading our products." Defendants' UMF no. 5 and doc. no. 42-5.

-- On October 2, 2017, plaintiff did not appear for work and did not call in regarding his absence. Defendants' UMF no. 6.

-- On the morning of Tuesday, October 3, 2017, plaintiff left a voicemail for Calloway, which stated as follows.

> Hey Patrick, it's Tommy. Hey, something has happened to me over the weekend. I got drugged or something. Man I cannot move. I am just now waking up. I don't know what happened. I can't function. Somebody slipped me something over the weekend.

Defendants' UMF no. 7 and doc. no. 52-7 (voicemail recording).

-- Calloway interpreted this voicemail as an attempt by plaintiff to hide the fact that plaintiff had simply extended his weekend trip to Arkansas, with friends, through that Tuesday morning. Defendants' UMF no. 8.

-- Other than plaintiff's voicemail to Calloway, neither plaintiff nor anyone else on plaintiff's behalf, contacted defendants on October 3, 2017. *See*, *e.g.*, doc. no. 50, plaintiff's statement of additional facts (SOF) nos. 17-21; plaintiff's timeline of events (doc. no. 50, pp. 19-20) (listing no contacts other than plaintiff's voicemail to Calloway, on or before October 3, 2017).

-- Due to his failure to appear at work two days in a row (October 2 and 3) with what defendants believed was no credible explanation, as well plaintiff's previous work issues, defendants decided to terminate plaintiff's employment on Tuesday, October 3, 2017. Defendants' UMF no. 9.

-- Accordingly, on October 3, 2017, Elledge sent an email to plaintiff, at 6:39 p.m., advising plaintiff of his termination. The email stated that "effective

immediately on October 3, 2017, you are no longer an employee of Dobson Technologies." The email also stated that plaintiff's official termination letter and COBRA notification were attached. The email asked plaintiff to return all company property and stated that "All accesses have been turned off, but feel free to call me at [number] if you have any questions." Defendants' UMF no. 11 and doc. no. 42-12 (email).

-- On October 3, 2017, Elledge also sent a letter to plaintiff. The letter stated: "This letter will serve as notice to you of your end of employment with Dobson Technologies (the "Company") effective October 3, 2017." The letter addressed arrangements for plaintiff to recover any personal belongings that might be located at the company, the need for plaintiff to return company keys, and the details of plaintiff's final paycheck. Defendants' UMF no. 11 and doc. no. 42-13 (letter).

-- As of October 3, 2017, plaintiff had at his disposal less than four hours of paid time off (3.6740 hours). Defendants' UMF no. 12 and doc. no. 42-14.

-- As of October 3, 2017, plaintiff had not been employed by Dobson for at least twelve months. *See*, defendants' UMF no. 1 (hire date of November 10, 2016); doc. no. 14, ¶ 75 ("At the time of his termination, Plaintiff was within approximately one month of his one-year anniversary of employment with Defendant Dobson.").

-- Unbeknownst to defendants on October 3, 2017 when the decision was made to terminate plaintiff's employment, plaintiff had, on that date, been taken to Sparks Medical Center in Ft. Smith, Arkansas, where he arrived at 1:28 p.m. and was diagnosed with a subarachnoid hemorrhage (a brain aneurysm). Defendants' UMF no. 13. Prior to that time, no one, including plaintiff, had known that plaintiff was at risk for an aneurysm. Defendants' UMF no. 13.

-- On October 4, 2017, plaintiff's friend, Tom Hunt, left a voicemail for Calloway, advising Calloway that plaintiff was in the hospital in Ft. Smith,

Arkansas; that plaintiff would be there for a while; that plaintiff had wanted Hunt to call Calloway; and asking Calloway to call Hunt to talk about it, leaving a phone number.  Defendants' UMF nos. 13-15.

   -- The October 4, 2017 voicemail from Hunt to Calloway was the first time defendants became aware of plaintiff's medical condition.  Defendants' UMF No. 16.  Thus, defendants did not know of plaintiff's medical condition on October 3, 2017, when the decision was made to terminate plaintiff's employment.  Defendants' UMF no. 17.

   -- Plaintiff received medical care at Sparks Medical Center from October 3, 2017 through October 25, 2017.  He was then transferred to Valir Rehabilitation Hospital in Oklahoma City, where he stayed from approximately October 25, 2017 through November 3, 2017.  He was admitted to Medical Park West-SNF in Norman, Oklahoma, on November 3, 2017.  Plaintiff stayed there until he was discharged, on November 22, 2017, to return home.  Defendants' UMF nos. 20-22.

   -- Between October 3, 2017 and October 10, 2017, plaintiff underwent various surgeries, procedures and medical interventions.  Doc. no. 50, plaintiff's SOF nos. 3-6, 24.  Although there is some dispute regarding the details of plaintiff's exact condition and mental capacity during the period of October 3, 2017 to October 10, 2017, the court, for purposes of this motion, presumes that plaintiff's condition during that time did not permit him to check voicemail, read his emails, or receive mail.  Plaintiff's SOF nos. 24-25.

   -- On approximately March 1, 2018, plaintiff became employed as a technical support analyst at Kemper Insurance.  Defendants' UMF no. 22.  His employment lasted approximately ninety days.  While plaintiff was employed at Kemper Insurance, he was having memory issues.  Defendants' UMF No. 22 and deposition, doc. no. 42-10, p. 39 (Q:  "So if you were unable to perform your job at Kemper

Insurance because of your memory issues, would you have been able to do your job at Dobson during that same time period?" A: "I probably would have had the same struggles with my memory, I'm sure.").

-- On September 11, 2020 (the date of his deposition), plaintiff testified that he was still having trouble with his memory. Defendants' UMF no. 24 and doc. no. 42-10, p. 30.

IV. Discussion

A. Disability Claims Alleged under the ADA

There is no direct evidence of disability discrimination. Therefore, the McDonnell-Douglas[3] burden-shifting framework applies. E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1038 (10th Cir. 2011). Under that framework, when challenged by a summary judgment motion, plaintiff must make out a prima facie case of discrimination; if plaintiff satisfies this requirement, it becomes defendant's burden to articulate a legitimate, non-discriminatory reason for its action; if plaintiff does so, then the burden shifts back to plaintiff to identify evidence sufficient to create a genuine issue of fact regarding pretext. Id. at 1038-39.

1. The Termination Claim

The prima facie elements of a disability discrimination claim require evidence: 1) that plaintiff is a disabled person within the meaning of the ADA; 2) that plaintiff is qualified, with or without accommodation, to perform the essential job functions of the job he held; and 3) that plaintiff suffered discrimination by his employer because of that disability. DeWitt v. Southwestern Bell Telephone Co., 845 F.3d 1299, 1308 (10th Cir. 2017).

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

7

Defendants focus mainly on the third element.[4]  In the context of a termination claim, the third element requires evidence that plaintiff was terminated because of his disability.  Defendants argue that because plaintiff was terminated before defendants knew about his disability (i.e. before defendants knew about the aneurysm or plaintiff's resulting condition), plaintiff has no evidence to show or suggest that he was terminated because of that disability.

Plaintiff responds with two arguments.

First, plaintiff argues that there are fact issues regarding when defendants knew about plaintiff's disability, so that the evidence is unclear as to whether defendants knew about the disability before they decided to terminate plaintiff's employment.  This argument relies on the voicemail plaintiff left for Calloway on October 3, 2017, which the parties agree was received before defendants decided to terminate plaintiff's employment.  Plaintiff contends the voicemail creates a genuine fact issue  as to whether defendants were aware of plaintiff's disability when, on October 3, they decided to terminate his employment.

The voicemail, however, does not identify anything that would qualify as a legal disability, much less plaintiff's specific disability.[5]  Moreover, the voicemail is entirely consistent with defendants' interpretation of it, which was that plaintiff,

---

[4] Defendants also argue that the second element is not met.  They contend that due to continued memory issues, plaintiff would not be able to perform the essential functions of the job he had held, with or without accommodation.  Doc. no. 42, p. 11, n.1.  The court does not address that argument.

[5] *See*, *e.g*., Morisky v. Broward County, 80 F.3d 445, 448 (11th Cir. 1996) (neither plaintiff nor her vocational counselor had informed defendant of plaintiff's specific disability; to put defendant on notice that plaintiff had a developmental disorder, plaintiff relied on information she furnished, which indicated she could not read and had taken special education courses;  court stated that vague or conclusory statements revealing an unspecified incapacity were not sufficient to put the employer on notice of obligations under the ADA;  upholding summary judgment for the defendant).

after missing work on October 2 without calling in, had extended his trip to Arkansas and was calling on October 3 to explain his on-going absence. Plaintiff, for his argument that the voicemail put defendants on notice of a disability, relies on statements in the voicemail such as: "Man, I cannot move," and "I can't function." But the voicemail also states: "I got drugged or something," "I am just now waking up," and "Somebody slipped me something over the weekend."

      The law does not require an employer to be clairvoyant. Evaluating the voicemail in the circumstances then known to the defendants, there is nothing in the voicemail to suggest that plaintiff was suffering from a disability within the meaning of the law. The court rejects plaintiff's argument that the voicemail put defendants on notice that he was disabled and triggered obligations under the ADA.

      Plaintiff's second argument for avoiding summary judgment on the termination claim, is that his employment was not terminated on October 3, 2017. Plaintiff argues that his termination could not have occurred until October 6 at the earliest, and possibly as late as October 10, when plaintiff contends he began to regain cognitive function. Plaintiff argues that by either of those dates, his friend, Hall, had, by Hall's call on October 4, put defendants on notice of plaintiff's disability. Plaintiff also points to other contacts with the hospital, made by friends or family on his behalf, which occurred after Hall's call.

      In support of this argument, plaintiff argues that a termination is not effective until it is communicated to the employee. Plaintiff's cases deal with limitations, i.e. with the time an employee has to file a discrimination claim with an administrative agency. In such cases it may well be necessary to determine when the employee was put on notice that his employment had been terminated. Here, the issue is not when the limitations period began to run, but what caused defendants to terminate plaintiff's employment. The date on which an employer decides to terminate a

9

worker's employment is the relevant date for determining what the employer could or could not have known, and therefore what could or could not have motivated the employer to terminate employment.

Furthermore, despite plaintiff's arguments that the termination was not effective until it was communicated, it is undisputed that several communications (a voicemail, an email and a letter) were sent to plaintiff on October 3, 2017. Thus, what plaintiff appears to mean by his "not yet communicated and therefore not yet terminated" argument, is that his termination was not effective until he received and understood defendants' communications. Plaintiff has identified no on-point authority for that proposition, and the court rejects it. At least in the context of this case, the law simply cannot be that a termination notice is only effective when the employee reads and understands it. Otherwise, an employee could control when or even whether he is terminated, by, for example, not opening or reading a notice from his employer.

An employer who fires an employee without having a first-hand conversation with that employee may run certain risks—for example, that there may be more to the story than the employer knows. But one of those risks is *not* that the employer may have liability on a disability discrimination claim, despite having no basis by which to know the terminated employee is disabled.

Plaintiff has not identified a genuine fact issue with respect to whether plaintiff was terminated because of his disability. Accordingly, plaintiff has not identified evidence to establish the prima facie elements of his termination claim, and defendants are entitled to summary judgment on this claim.

2. The Failure to Accommodate Claim

For purposes of a failure to accommodate claim, the employee must make an initial showing: 1) that he is disabled within the meaning of the ADA; 2) that he is

otherwise qualified; 3) that he requested a plausibly reasonable accommodation; and 4) that the employer refused to accommodate the disability. Aubrey v. Koppes, 975 F.3d 995, 1005 (10th Cir. 2020). Defendants argue there is no evidence to support the third element, because plaintiff did not request an accommodation of his disability.

Before an employer's duty to provide reasonable accommodations or to participate in the interactive process is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice. E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1049 (10th Cir. 2011). Furthermore, awareness of a disability is not sufficient to place the employer on notice that an employee needs an accommodation. Dinse v. Carlisle Foodservice Products, Inc., 541 Fed. Appx. 885, 890 (10th Cir. 2013) (unpublished). The employee must make an adequate request for an accommodation for the disability. *Id.*, citing C.R. England, 644 F.3d at 1049-1050. The request for accommodation must be sufficiently direct and specific, giving notice that the employee needs a special accommodation. C.R. England, Inc., 644 F.3d at 1049.

Here, there is no evidence that plaintiff requested an accommodation. Plaintiff does not contend otherwise. Rather, plaintiff argues that a request was not required because plaintiff's need for accommodation was obvious, based on the matters which plaintiff communicated in his voicemail left for Calloway on October 3, 2017. The court rejects this argument. Just as plaintiff's voicemail did not put defendants on notice that plaintiff was disabled, it also did not put defendants on notice of an obvious need to accommodate a disability.

Plaintiff contends, again, that he was not actually terminated until a termination notice was received and understood by him on October 6, 2017, at the earliest. Plaintiff argues that by that time, Hunt's October 4, 2017 call (and later

11

contacts by others) had put defendants on notice of plaintiff's obvious need for accommodation. The court has already rejected plaintiff's argument that the termination did not occur until October 6 or later. Once plaintiff's employment was terminated on October 3 based on factors other than plaintiff's disability (which is what happened here, as the court has found that defendants did not know of plaintiff's disability on October 3), any obligation which defendants might have otherwise had to accommodate plaintiff's disability necessarily ended, as plaintiff was no longer an employee.

Defendants are entitled to summary judgment on plaintiff's failure to accommodate claim.

### B.  Disability Claims Alleged Under the OADA

The analysis is basically the same with respect to disability discrimination claims alleged under the ADA and the OADA. *See*, *e.g.*, Wilson v. State Insurance Fund ex rel. State of Oklahoma, 106 F.3d 414 (Table), 1997 WL 12929, *2 (10th Cir. Jan. 15, 1997) ("For essentially the same reasons set forth in our analysis of the ADA claim, plaintiff's state statutory claims also fail."), unpublished. Accordingly, for the same reasons that defendants are entitled to summary judgment on the ADA claims, they are also entitled to summary judgment on the OADA claims.

### C.  The FMLA Claim

Defendants challenge the FMLA claim on the ground that when plaintiff's employment was terminated, he had not worked for Dobson for at least twelve months. Thus, defendants argue that plaintiff was not an eligible employee within the meaning of the FMLA and is therefore not entitled to invoke any of its protections. *See*, 29 U.S.C. § 2611(2)(a)(i)-(ii) (definition of eligible employee). Defendants concede there are circumstances in which the law extends FMLA protections to an employee who would not otherwise be eligible, but they argue no

such circumstances exist here. They point out, for example, that plaintiff had less than four hours of accrued paid time-off at his disposal when he was terminated. Thus, plaintiff was not entitled to any type of company leave which could have carried him across the one-year anniversary of his employment date.

Plaintiff, in response, argues that he was entitled to leave under the ADA as a reasonable accommodation of his disability. Plaintiff argues that this type of leave would have carried him through the anniversary date, making him an eligible employee for purposes of the FMLA. This argument depends on plaintiff's claim that he was entitled to an accommodation of his disability, specifically, a leave of absence, which would have continued through at least November 10, 2017, the anniversary of his hiring. This order has already rejected plaintiff's claim that he was entitled to an accommodation of his disability. Accordingly, the premise of plaintiff's argument for saving his FMLA claim fails, and defendants are entitled to summary judgment on the FMLA claim.

## V. Conclusion

After careful consideration, the court finds that defendants are entitled to summary judgment in their favor on all claims alleged in this action.

The motion for summary judgment filed by Dobson Technologies, Inc., Patrick Calloway, Trent LeForce and Sarwat Elledge is **GRANTED**. Doc. no. 42.

It is so ORDERED this 4th day of January, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0915p015.docx